And I'm going to be presiding, and each side will have 10 minutes for argument. We'll begin with Mr. Robinson, who's here in person. And if, Mr. Langer, if you have any difficulty hearing us, would you holler so we can make sure that you are able to participate fully? Yes, I will, Your Honor. Okay. Mr. Robinson. Thank you, Your Honor. May it please the Court. Kent Robinson appearing on behalf of the United States. The government brought this appeal because it believed the district court miscast the burden of both the government and the predecessor district judge assigned to the case in policing the Speedy Trial Act. I'm prepared to address those issues, but the court did issue an order asking me to address the defendant's custody status at this time. I assume he's gone? He is gone. He was deported in April of 2003. Why didn't you seek a stay from the court of appeals? It looked to me like Judge Haggard, he essentially ordered him removed sort of as part of the relief because of the 14-month delay that he'd suffered and took steps to put him beyond our reach. And so may I assume from your failure to seek a stay that you acquiesced in the? I did acquiesce in that. I did acquiesce in that, Your Honor, and I did so for the following reasons. Number one, I do not believe it moots the case before this Court. My legal authority for that is United States v. Montalvo-Murillo, 495 U.S. 711 at 713, a 1990 decision, and also the Ninth Circuit's en banc decision in Peretti v. United States, 143 F. 3rd at 508. The latter is a fugitive disentitlement case. The first is a case involving a government appeal of a release decision where the defendant had become a fugitive. In both those contexts, the Court has held that the absence of the defendant from the jurisdiction of the court does not moot the case but may give rise to a discretionary basis for the court not to hear the case. Well, let me ask you this. Assuming that it's not moot, and as I understand the case law, I don't think it is, even though the government has actively deported him. You can't say that he's fled. He's not a fugitive. That's correct. So we can't proceed in absentia. If we grant you the relief that you seek as a practical matter, this case will just simply sort of hang in limbo unless and until Mr. Mejia Garcia illegally returns to the United States and is arrested for yet another illegal leave. That's correct. So why would we do that? Are we trying to send a message to Judge Hagerty that you shouldn't have done what you did? You are, number one, resolving what the status of these charges would be at the time he is found and reenters, and that's precisely what the Supreme Court said was sufficient to overcome the mootness argument in the first case I cited. And secondly, you are so it is a case in controversy. And second, it's not a matter of sending a message, but it is a matter of resolving the important legal issues that I think are raised by Judge Hagerty's ruling. Why did you seek a stay of the deportation so that you could give effect to whatever our ruling might be? Because under the unique circumstances of this case, I have another illegal entry case where I have fought, which I'm prosecuting an appeal on, where I have sought continued detention. Under the unique circumstances of this case, where the court had found prejudice to the defendant because of his detention, I thought it would exacerbate that prejudice by continuing the detention for what it would have been in all likelihood at least another year. It's been 10 months, I think, since the dismissal. I sought to find a middle ground. We're in an area of equity at this point about whether or not the court should consider the case. And so I would hope that the court would proceed to address that. What would happen to him if he had not been deported? Would he have simply been released? No. Under no circumstances would he have been eligible for release, Your Honor. He would have been held by the INS in custody there had we not permitted the deportation to go forward. As an aggravated felon, he is statutorily ineligible for release by INS. Of course, that inevitably would have resulted in the filing of a habeas corpus petition and district court litigation about whether he should have been released. But our position certainly would have been he wasn't eligible for release. All right. Let's turn to the issue then as to why Judge Hagerty should not have given deference to Judge Fry's determinations that the continuances were legitimate under 3161H. Well, I think Judge Hagerty should have given deference, and he failed to do so. First of all, it's not clear that Judge Hagerty ruled under 3161. That's the Speedy Trial Act. The terms of his order were invoked the constitutional right to speedy trial. If we remanded it to Judge Hagerty at this point, why does he need to do anything in the absence of the defendant? I mean, I share the same concern that you have. I don't see that he did make a Speedy Trial Act ruling on this record. It looks to me like he made a Sixth Amendment determination and only a Sixth Amendment determination. I think that's correct. But I think the record with respect to the Speedy Trial Act issue, however, is complete. The only issue remaining is a legal issue. It's one that this Court could address, and it's certainly one that he could address on remand. Even in the absence of the defendant, you want us to send this back down for further proceedings in the district court to clarify the basis for the ruling? I mean, it's no, I think the basis for the ruling is perfectly clear. I think he ruled only on the constitutional grounds. Right. But if we reverse him on the Sixth Amendment violation, don't we then have to still send it back to him and say, now, tell us what your ruling is on the Speedy Trial Act? He could certainly address the Speedy Trial Act claims on remand. That's true. It seems to me whatever the – I mean, I'm speaking only for myself, but whatever the technical constitutional permission we have to decide the case, it seems like a truly pointless exercise, because if he returns, it will be of necessity illegally, and he'll be subject to a new prosecution, which will have none of these issues or problems in it. I guess I just don't see the point. Well, I understand that, Your Honor. I think the implications of that ruling would be that this defendant had to stay in custody. And that then that would be – it would be incumbent on me as the government in any subsequent case where the defendant was facing deportation to say that he had to stay in custody. And – But all of those statutory factors are already present. I mean, I think – and I kind of agree with Judge Graber. It's still an aggravated felony for other reasons. If he comes back – That's true. You're going to indict him again on exactly the same charges that he was facing this time around. Well, they'd be new charges. He's going to be remanded to custody because of his immigration status. You could proceed with that prosecution completely without regard to what happened this time around. You'd never need to reach any of these issues. Well – You'd still be looking at the same sentencing guidelines of 60-plus months because of his criminal background.  It would be a second and an additional. You'd have two counts of the same offense. Pardon me? Two counts of unlawful reentry. But does that ultimately change anything? He will have reentered unlawfully twice. That's correct. It would be two separate times. What's the ultimate change? Well, I would not be able to proceed on the case that Judge Haggerty dismissed. But how does it benefit you to be able to proceed? He's not here to put in jail. He's somewhere else. That's correct. And you're going to get as much time, if not more, the next time around. Oh, I'm not sure that's true. I'm familiar with two independent crimes, Your Honor. I have an attempt to do a sentencing guidelines computation on that. But I think with the two separate offenses occurring at different points in time, it's not at all clear to me that we would get the same amount of time. I mean, it's still going to be a 16-level increase because of his status as an aggravated felon. That's true. But the criminal history would change. You'd have two separate convictions. You'd have multiple counts of conviction. The multiple count rules would apply, et cetera. But you're still going to have multiple counts anyway because you're going to have entry without inspection. You're going to have being found in or present. No, that's not true. Because the only counts that would still be available to us would be the ones on the subsequent reentry, not the one that Judge Haggerty dismissed. I'm assuming that he's going to enter the same way that he did the last time that gave rise to those crimes.  If you don't create new crimes, then there will still be multiple counts. No, that would only be a single count. I must say, counsel, I'm a little puzzled by the procedural posture that we're in here without a defendant. Well, I appreciate that, Your Honor, and I'm not sure I can say any more about it than I already have, which is that I thought there was an important legal principle that needed to be pursued here, but on balance, I chose not to come to this court to try to keep the defendant in custody, given the district court's finding that the defendant has suffered prejudice by that. I thought it would exacerbate what we were dealing with, and I thought that the court – I hoped that the court would exercise its discretion to address these matters. We do – I would note, this is a defendant who has been deported three times and already been convicted of illegal reentry once. Frankly, Mr. Robinson, why I'm saying to you, I don't see that this case, standing all by itself, makes a whitted difference with this guy's background. He's going to get hammered the next time he comes back. Well, and if he comes back, we should be entitled to prosecute him on these charges that Judge Hagerty dismissed. I understand your position. Maybe we should hear from Mr. Langer.  Mr. Langer. Thank you. Yes, Your Honor. Could you – I would – I would rely on my brief. I believe that my client's constitutional rights were violated. The judge made all necessary findings regarding the constitutional issue. It may be that he did not explicitly rule on the statutory speedy trial claim, but he said that my client never waived his rights. And I believe that we proved that there was certainly substantial prejudice to my – that there was a prejudice, and it should have been dismissed. And I noticed that the government said that it shouldn't have been dismissed with prejudice, but that has never been preserved. The government never claimed, Judge, how come you – how come you dismissed with prejudice? So the court shouldn't reach that issue. And I believe that my affidavit clearly states what kind of state of mind the client was, and that there was a lengthy delay. In my mind, it was 14 months. There was a reason for that delay, perhaps for a short period of time, but not for 14 months. I believe that the client asserted his constitutional rights. He wrote to his lawyer. He was very upset in September, wouldn't sign the declarations. And in addition, it seems to me that all of these declarations were signed subsequently, the court granting the motion for the continuance. And I believe that the court and the prosecutor should, as they are obligated, look into these simple cases so that they wouldn't be dragging for such a long time. And so nobody did anything. These continuances were granted. I noticed that the court is concerned with the issue of the previous judge, that Judge Fry granted these continuances. Clearly, she didn't have the information the defense uncovered after the previous counsel was removed. In other words, she didn't know about the client being assertive, that he doesn't want to continue, that he sent a letter to the public defender's office, in addition that he didn't want to sign when they asked him to sign. And in all other respects, really, I rely on my brief. Does any member of the panel have any questions for Mr. Lyer? I don't. Okay. Thank you, sir. Mr. Robinson, you used up your time, but we'll give you about 30 seconds for rebuttal if you'd like it. I'm happy to submit on the record, Your Honor, unless the court has any questions about the substantive constitutional issues that I briefed. I think we do not. Thank you, counsel. The case just argued is submitted, and we thank both counsel for their arguments. With that, we will be adjourned for the morning calendar. Thank you very much. The court for this session stands adjourned. Mr. Langer? Yes. Okay, I'm going to hang up now. All right. Thank you very much. The man was at the door. Thank you. Bye-bye. Thank you. Thank you. Thank you.
judges: Graber, Tallman, Clifton